166 So.2d 714 (1964)
Harvey B. ARDELL, D.D.S., Appellant,
v.
Henry B. MILNER, Appellee.
No. 63-368.
District Court of Appeal of Florida. Third District.
July 7, 1964.
Rehearing Denied August 25, 1964.
*715 Herman Grayson, Miami Beach, for appellant.
Rosenhouse & Rosenhouse, Miami, for appellee.
Before BARKDULL, C.J., and HORTON and HENDRY, JJ.
BARKDULL, Chief Judge.
Appellant, plaintiff in the trial court, appeals from an adverse directed verdict, rendered at the conclusion of all the evidence in an unlawful eviction cause. The trial judge, in directing the verdict, found as a matter of law that there had been no unlawful eviction and, second, that there had been no competent, sufficient evidence to establish any damage in the event there had been such an unlawful eviction.
The record before the trial judge at the time of the entry of the directed verdict, resolving all inferences in favor of the party moved against in accordance with the applicable principles [see: Teare v. Local Union No. 295, Fla. 1957, 98 So.2d 79; Huff v. Belcastro, Fla.App. 1961, 127 So.2d 476; Farber v. Houston Corporation, Fla.App. 1963, 150 So.2d 732], reveals the following: That the parties had a written lease and the tenant took possession. Subsequently, because the landlord failed to supply adequate air conditioning and other services, the tenant withheld certain rentals due. That the parties were in dispute as to the exact amount of rent due and, thereafter, the landlord proceeded to the premises in question at night, changed the locks on the doors and by such measure successfully evicted the tenant from possession of the premises. The tenant was a dentist maintaining his professional offices in the demised premises, and the effect of such eviction caused him damages to his profession, a loss of patients, and deprived him of access to his books, records and instruments.
The first question to be determined is whether or not [pursuant to the written terms of such a lease as is involved in the instant case], upon default in rent, a landlord *716 may take possession of the demised premises and evict the tenant without due process of law. The second question is: Assuming that an unlawful eviction has occurred, is it necessary for a plaintiff to establish actual damages or is the mere fact of the unlawful eviction sufficient to send the case to the jury for the purpose of at least determining normal damages?
At common law, a landlord could reenter or retake possession on the expiration of the tenant's right to occupy the premises or on the breach of a covenant or condition of the lease. The doctrine of self-help included forcible reentry on the part of the landlord but, due to breaches of peace resulting from forcible reentry, the statute 5 Rich II was enacted making forcible entry a crime. Thereafter, the means to recover possession was by common law ejectment. Thus, except where reentry can be made without force, the right to reenter at common law is simply the right to maintain ejectment. See: 52 C.J.S. Landlord and Tenant § 716, and cases cited therein.
However, under the common law, non-payment of rent does not as a general rule work a forfeiture and confers no right of reentry. See: 52 C.J.S. Landlord and Tenant § 718b. In Florida, the Legislature has enacted § 83.05, Fla. Stat., F.S.A., and its predecessors, giving the right to entry upon default in rent in derogation of the common law, and intending that said statute should be read into every contract calling for payment of rent, though not set out in haec verba. See: Baker v. Clifford Matthew, Inc., Co., 99 Fla. 1229, 128 So. 827. It appears that Ch. 83, Fla. Stat., F.S.A., provides for summary remedies by which a landlord may speedily regain possession and said remedy is exclusive of the right of the landlord to make a forcible entry, even though the lease contains a provision permitting the landlord to reenter. See: Adelheim v. Dougherty, 129 Fla. 680, 176 So. 775.
As to the damages, in the event of unlawful eviction, the lessee is entitled to recover general damages which would be the difference between the market value of the lease held and the rent payable under it, and for loss of profits provided these losses can be ascertained with a reasonable degree of certainty. See: Young v. Cobbs, Fla. 1955, 83 So.2d 417; 20 Fla.Jur., Landlord and Tenant, §§ 48, 49.
The plaintiff's evidence as to damages was, at best, weak. But certainly, as to the loss of profits, it was within the province of the jury to infer from the evidence that a loss would have occurred. Generally, if future profits are too speculative they cannot be ascertained by a jury. However, where there is evidence that there was in fact a loss of revenue, to wit: loss of patients by virtue of being unable to continue in the same location, it was a certainty of loss if not a certainty of amount, and the plaintiff should have been permitted to have the cause determined by a jury. See: Hodges v. Fries, 34 Fla. 63, 15 So. 682; Twyman v. Roell, 123 Fla. 2, 166 So. 215; Harvey Corp. v. Universal Equipment Co., 158 Fla. 644, 29 So.2d 700; 9 Fla.Jur., Damages, § 79. To do otherwise, when in fact the plaintiff had made a prima facie case of a loss, would permit the defendant to gain from his own wrong. If in fact he unlawfully evicted the plaintiff and the plaintiff has demonstrated a loss of patients, the landlord should not now be heard to complain that this loss cannot be accurately measured.
Therefore, we reverse the action of the trial judge in directing a verdict for the defendant, and remand the cause for a new trial.
Reversed and remanded with directions.