# IN THE SUPREME COURT OF IOWA

No. 22–1995

Submitted February 21, 2024—Filed May 3, 2024

**TERRACE HILL SOCIETY FOUNDATION,**

Appellee,

vs.

**TERRACE HILL COMMISSION** and **KRISTIN HURD,** in her official capacity as chairperson of the Terrace Hill Commission,

Appellants.

Interlocutory appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

Interlocutory appeal from denial of motion to dismiss on sovereign immunity grounds. **AFFIRMED AND REMANDED.**

McDonald, J., delivered the opinion of the court in which all justices joined.

Brenna Bird, Attorney General; Eric Wessan (argued), Solicitor General; Andrew Ewing, Assistant Attorney General; and Samuel P. Langholz (until withdrawal), Chief Deputy Attorney General, for appellants.

Jason M. Casini (argued) of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

**McDONALD, Justice.**

This interlocutory appeal concerns a dispute between the Terrace Hill Society Foundation (THSF) and the Terrace Hill Commission (the Commission) regarding property and historical artifacts (the collection) used and displayed in the Governor's official residence, Terrace Hill. THSF filed a petition and then an amended petition for declaratory relief against the Commission and its chairperson, Kristin Hurd. In its amended petition, THSF sought a declaration that it was the sole owner of the collection and sought injunctive relief that gives it the right to access the collection to itemize, insure, maintain, and preserve it. The defendants moved to dismiss the suit on the ground the suit was barred by the doctrine of sovereign immunity and on the ground Hurd could not provide the requested relief. The district court denied the motion with respect to the Commission, but it granted the motion with respect to Hurd and dismissed the claims against her without prejudice. The questions presented in this appeal are whether the district court erred in denying the State's motion to dismiss this suit against the Commission and whether the district court should have dismissed the suit against Hurd with prejudice.

I.

In reviewing a ruling on a motion to dismiss, we accept as true the factual allegations contained in the pleading. *See Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014). Terrace Hill is the official residence of the Governor of the State of Iowa. THSF is a nonpartisan, nonprofit corporation organized pursuant to Iowa Code chapter 504. It is the result of a 2012 merger between two predecessor organizations, the Terrace Hill Foundation (the Foundation) and the Terrace Hill Society (the Society). For ease of reading, unless context and specificity require otherwise, we refer to all three organizations collectively as "THSF." The Commission is a state agency organized under Iowa Code

section 8A.326. The Commission is charged with "provid[ing] for the preservation, maintenance, renovation, landscaping, and administration of the Terrace Hill facility." Iowa Code § 8A.326(3) (2022). Hurd serves as the chairperson of the Commission. THSF's claims against Hurd were asserted against her "solely in her official capacity as" chairperson of the Commission.

According to the amended petition, in 1996, the Commission, the Society, and the Foundation entered into an operating agreement regarding Terrace Hill. The 1996 agreement provided, as relevant here, that the Commission, the Society, and the Foundation were "mutually resolved in the future to work harmoniously and cooperatively in the overall goal of restoring, preserving and improving Terrace Hill; and will present honestly and forthrightly, as with a single voice, the workings and needs of Terrace Hill to the community at large." THSF concedes the 1996 agreement is no longer in force.

The amended petition averred that "[f]or nearly fifty years, including, but not limited to, the time period in which the 1996 Agreement was in effect, THSF . . . received hundreds of items of donated property, including, but not limited to, historical artifacts . . . along with monetary donations for Terrace Hill furnishings and for the restoration, preservation, and improvement of Terrace Hill." THSF placed many items from the collection into the "custody and control of the Commission, in reliance on the commitments by the Commission as set forth in the 1996 Agreement and in many other communications with present and former members of the Commission to work together 'harmoniously' and 'cooperatively' with the 'mutual goal of restoring, preserving and improving Terrace Hill.'" The amended petition stated that THSF placed items in the care and custody of the Commission "subject to the express understanding that it was owned by, and would continue to be owned by, those predecessor

organizations and (now) THSF, without any express or implied relinquishment of any ownership rights by THSF or its predecessor organizations."

The amended petition stated that a disagreement has developed between THSF and the Commission "regarding ownership and control over the Collection, resulting in the Commission, in effect, asserting control over the Collection and denying THSF control over it or access to it." In the amended petition, THSF sought a declaration that it was the sole owner of the collection, an injunction to obtain access to the collection for a variety of purposes, and any "other . . . additional relief that the Court deems just and equitable under the circumstances." THSF also sought a declaration that any claim of ownership contrary to THSF's interests was "invalid and unenforceable, and in violation of federal law . . . and state law."

The defendants moved to dismiss THSF's amended petition. The Commission argued the suit was barred by the doctrine of sovereign immunity. The Commission argued that the State had explicitly waived its sovereign immunity and consented to suit for certain claims involving real property, citing Iowa Code section 613.8. By negative inference, the Commission argued, the State had not waived its sovereign immunity and consented to suit for claims involving personal property. Hurd argued the claims against her failed because she did not have the legal authority as chairperson to provide the requested relief. In her view, only the Commission as a whole could provide the requested relief.

THSF resisted the motion to dismiss. THSF argued the Commission constructively or impliedly waived sovereign immunity through its prior conduct. Relying on *Lee v. State*, 815 N.W.2d 731 (Iowa 2012), *State v. Dvorak*, 261 N.W.2d 486 (Iowa 1978), and *Kersten Co. v. Department of Social Services*, 207 N.W.2d 117 (Iowa 1973) (en banc), THSF maintained that this was a case

where "the rule of immunity was waived because the State had voluntarily created [a] legal relationship[] with private citizens that subjected it to liability." *Lee*, 815 N.W.2d at 738. At the hearing on the motion to dismiss, THSF's counsel specified that the voluntary legal relationship between THSF and the Commission was "clearly" or "essentially" a "common law bailment."

The district court denied in part and granted in part the defendants' motion to dismiss. The district court concluded that the factual allegations in the petition, when taken in the light most favorable to THSF, alleged facts sufficient to overcome the State's immunity from suit. The district court explained:

> Here, the Court finds that, when looking at the factual allegations in the light most favorable to THSF, the Commission's prior conduct subjects it to suit in this matter. The Commission willingly accepted possession of THSF's property. It retained such possession after the 1996 Agreement expired. THSF has property rights under state law and the Iowa Constitution, and it is entitled to have this Court rule on the merits of its ownership claims.

The district court granted the motion with respect to Hurd and dismissed the claims against her without prejudice rather than with prejudice.

II.

We first address the Commission's sovereign immunity argument. As early as 1855, this court applied the common law doctrine of sovereign immunity. *See Chance v. Temple,* 1 Iowa (Clarke) 179, 201 (1855). Under this doctrine, the State cannot be sued absent its waiver or consent to suit. *See Lee,* 815 N.W.2d at 738; *Dvorak,* 261 N.W.2d at 489. Under Iowa law, the doctrine of sovereign immunity is more than immunity from liability, it is immunity from suit. *See Anderson v. State,* 2 N.W.3d 807, 812 (Iowa 2024); *Wagner v. State,* 952 N.W.2d 843, 856 (Iowa 2020) ("The immunity of the State is from suit rather than from liability and remains the rule rather than the exception." (quoting *Lloyd v. State,*

251 N.W.2d 551, 555 (Iowa 1977))); *Lee v. State*, 874 N.W.2d 631, 637–38 (Iowa 2016) (stating the "principle of state sovereign immunity . . . recognizes that inherent in the nature of sovereignty is some degree of immunity from suit"); *Nixon v. State*, 704 N.W.2d 643, 645 (Iowa 2005) (stating the State "was immune from suit under the common-law doctrine of sovereign immunity"); *Callahan ex rel. M.H. v. State*, 385 N.W.2d 533, 538 (Iowa 1986) (discussing the "removal of immunity from suit"). The doctrine relieves the State from suffering "the indignity" of being subjected "to the coercive process of judicial tribunals at the instance of private parties." *Lee*, 815 N.W.2d at 738 (quoting *Alden v. Maine*, 527 U.S. 706, 749 (1999)).

This court has "consistently held [sovereign immunity] is a jurisdictional bar" to initiating and prosecuting a suit against the State absent its waiver or consent. *Segura v. State*, 889 N.W.2d 215, 220 (Iowa 2017); *see also Wagner*, 952 N.W.2d at 856–57 (stating "our courts lacked jurisdiction over suits brought against the state or its agencies sounding in tort" (quoting *Lloyd*, 251 N.W.2d at 555)); *Godfrey v. State*, 847 N.W.2d 578, 582–83 (Iowa 2014) (stating the doctrine of sovereign immunity is jurisdictional); *Schaefer v. Putnam*, 841 N.W.2d 68, 80 (Iowa 2013) (stating sovereign immunity is "a jurisdictional matter" (quoting *Swanger v. Iowa*, 445 N.W.2d 344, 346–47 (Iowa 1989))); *Hyde v. Buckalew*, 393 N.W.2d 800, 802 (Iowa 1986) (stating that the waiver of "sovereign immunity with respect to a particular type of claim is a matter of jurisdiction, the power of the court to hear and adjudicate a particular class of cases," and that sovereign "immunity was jurisdictional"). As a jurisdictional bar, the doctrine of sovereign immunity "prevent[s] our courts from hearing cases brought against the State or its agencies." *Callahan*, 385 N.W.2d at 538.

Because the doctrine of sovereign immunity is an immunity from suit and jurisdictional in nature, any waiver of sovereign immunity must be "strictly

construed." *Feltes v. State*, 385 N.W.2d 544, 548 (Iowa 1986) (en banc); *see also Segura*, 889 N.W.2d at 224 (recognizing "that jurisdictional matters must be carefully construed"). "[W]hen sovereign immunity is asserted, it is not the State's burden to show that the plaintiff could never state a viable claim. Instead, it is the plaintiff's burden to plead facts that affirmatively state a viable claim." *Matzen v. McLane*, 659 S.W.3d 381, 393–94 (Tex. 2021); *see also Young v. Johnson*, 860 S.E.2d 82, 83–84 (Ga. Ct. App. 2021) (holding plaintiff failed to satisfy burden of pleading waiver of sovereign immunity).

The Commission argues the district court erred in denying its motion to dismiss the amended petition on sovereign immunity grounds. The Commission emphasizes that the legislature has expressly waived sovereign immunity for suits "involving the title to real estate, the partition of real estate, the foreclosure of liens or mortgages against real estate, or the determination of the priorities of liens or claims against real estate, for the purpose of obtaining an adjudication touching or pertaining to any mortgage or other lien or claim which the state may have or claim to the real estate involved." Iowa Code § 613.8. Because the express statutory waiver involves only actions or claims relating to real property and not personal property, the Commission argues that the legislature has not waived the State's sovereign immunity for actions or claims relating to personal property.

The Commission is correct that the State can expressly waive its sovereign immunity when it enacts a statute consenting to suit. *See, e.g.,* Iowa Code § 17A.19(1) (waiving sovereign immunity for judicial review of agency actions); *id.* § 613.8 (waiving sovereign immunity in certain suits involving real estate); *id.* § 669.4(2) (waiving sovereign immunity for suits sounding in tort). But express statutory waiver is not the only way the State can waive its immunity as sovereign. The State can impliedly or constructively waive its immunity from suit

when it voluntarily creates certain legal relationships that subject it to liability. *See Lee*, 815 N.W.2d at 737–38. For example, we have held the State impliedly waived its sovereign immunity when it entered a contractual relationship. *See Kersten Co.*, 207 N.W.2d at 122. We have also held that the State impliedly waived its sovereign immunity when it assumed the legal obligations of a landowner. *See Dvorak*, 261 N.W.2d at 489. The implied waiver found in *Kersten Co.* and *Dvorak* "reflected our belief that the State is answerable for the legal relationships it voluntarily creates." *Lee*, 815 N.W.2d at 740.

A voluntary bailment is a legal relationship sounding in contract. *See Farmers Butter & Dairy Co-op. v. Farm Bureau Mut. Ins.*, 196 N.W.2d 533, 538 (Iowa 1972). "A bailment occurs when personal property has been delivered by one person, the bailor, to another, the bailee, for a specific purpose beneficial to the bailee or the bailor, or both, with the understanding the property will be returned to the bailor after the purpose has been accomplished." *Khan v. Heritage Prop. Mgmt.*, 584 N.W.2d 725, 729 (Iowa Ct. App. 1998). "Once a bailment is established, the law imposes specific duties upon bailees to care for the bailor's property while it is in their possession." *Id.* at 730.

THSF's amended petition alleges sufficient facts to plead a voluntary bailment and thus a voluntary legal relationship that impliedly waived the State's sovereign immunity. The amended petition provides, among other things, as follows:

> 18. At all material times, the Collection was placed in the care and custody of the Commission by THSF and its predecessor organizations, for use and display at Terrace Hill, subject to the express understanding that it was owned by, and would continue to be owned by, those predecessor organizations and (now) THSF, without any express or implied relinquishment of any ownership rights by THSF or its predecessor organizations.

> 19. As a result of the ongoing disagreement between the Commission and THSF regarding ownership and control over the Collection, the Commission has, in effect, and without legal

> authority to do so, asserted control over the Collection and denied THSF control over it or access to it.

"[T]he State, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent." *Kersten Co.*, 207 N.W.2d at 120; *see also Sweeten v. Lawson*, 404 P.3d 885, 886–87, 890–93 (Okla. Civ. App. 2017) (holding that action against museum for recovery of personal property could proceed notwithstanding sovereign immunity).

It is immaterial to our analysis that the amended petition did not use the word "bailment." "Iowa is a notice pleading state." *Nahas v. Polk County*, 991 N.W.2d 770, 776 (Iowa 2023). Under our notice pleading standard, the "petition need not allege ultimate facts that support each element of the cause of action." *Id.* (quoting *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004)). And the petition need not "identify a specific legal theory." *Adam v. Mt. Pleasant Bank & Tr. Co.*, 355 N.W.2d 868, 870 (Iowa 1984). Instead, the petition need only contain "factual allegations that give the defendant 'fair notice' of the claim asserted so the defendant can adequately respond to the petition." *Nahas*, 991 N.W.2d at 776 (quoting *Rees*, 682 N.W.2d at 79). "A petition complies with the 'fair notice' requirement if it informs the defendant of the incident giving rise to the claim and of the claim's general nature." *Id.* (quoting *Rees*, 682 N.W.2d at 79).

"A court should grant a motion to dismiss 'only if the petition on its face shows no right of recovery under any state of facts.'" *Id.* (quoting *Young v. HealthPort Techs., Inc.*, 877 N.W.2d 124, 127 (Iowa 2016)). Under our liberal notice pleading standards, we conclude the district court did not err in finding THSF's amended petition alleged sufficient facts to plead a voluntary legal relationship waiving the State's immunity from suit.

III.

We now address Hurd's appeal. Hurd contends the district court should have dismissed the claims against her with prejudice rather than without prejudice. The district court granted dismissal on the ground that Hurd is not a proper party in this suit because she could not provide the pleaded-for relief. On appeal, Hurd contends that this defect "cannot be cured by repleading." She points out that, under the Code, "[o]nly the Commission, acting in its discretion under state law, could contract with THSF to give it access to the historical collection." We find this argument unconvincing. Even if this were true, THSF could replead and add the remaining commissioners to the suit. In that event, Hurd would still be a party to the action. We affirm this part of the district court's ruling. *See* 5B Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1357, at 491 (4th ed. 2024) (stating that it is "clear" that dismissal pursuant to a motion to dismiss "generally is not with prejudice . . . because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected").

IV.

For the reasons stated above, we affirm the district court's order on the motion to dismiss. We remand to the district for further proceedings.

**AFFIRMED AND REMANDED.**